**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

NATHANIEL THOMAS ALTMAN,                    CASE NO.: 0:25-cv-62582-MD

    *Plaintiff,*

v.

EQUIFAX INFORMATION SERVICES, LLC,
AND TRANSUNION, LLC,

    *Defendants.*

_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT**
**TRANS UNION LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff Nathaniel Thomas Altman ("Plaintiff" or "Mr. Altman"), by and through

undersigned counsel, hereby files this Memorandum of Law in Opposition to Defendant Trans

Union LLC's ("Trans Union") Motion for Judgment on the Pleadings ("Motion") (ECF No. 30),

and in support thereof states:

**I. INTRODUCTION**

Trans Union's Motion asks this Court to dismiss with prejudice a complaint that, when read

as the governing legal standard requires—accepting all well-pleaded facts as true and drawing all

reasonable inferences in Plaintiff's favor—plainly states viable FCRA and FDUTPA claims. Trans

Union recasts Plaintiff's detailed factual allegations as "conclusory," imports a heightened pleading

standard that does not exist in Rule 8, and ignores the substantial factual specificity contained in

the Amended Complaint (ECF No. 12) ("Amended Complaint"). The Motion should be denied.

Plaintiff's Amended Complaint alleges that Trans Union reported inaccurate, incomplete,

and internally contradictory information across eight specific tradelines following disputes

identifying more than 210 specific data-field errors. It identifies each disputed account by name and furnisher, specifies the categories of inaccuracies account by account, and alleges that Trans Union's November 1, 2025 reinvestigation response failed to correct the identified errors—instead deleting certain accounts while improperly verifying others that remained demonstrably inaccurate. This is not the "blanket and conclusory" pleading Trans Union portrays. It is a complaint that satisfies *Twombly* and *Iqbal* as applied to FCRA claims in this District and Circuit.

Trans Union's reliance on *Gordon v. Equifax Info. Sols.*, 2025 WL 2765236 (S.D. Fla. Sept. 29, 2025), as grounds for dismissal with prejudice is particularly misplaced given what TransUnion itself discloses about that case's subsequent history. In footnote 1 of its Motion, TransUnion acknowledges that after this Court dismissed the *Gordon* amended complaint, the Court granted the plaintiff leave to amend, the plaintiff filed a Second Amended Complaint, Equifax moved to dismiss again—and the case settled before the Court ruled on that motion. *See* ECF No. 30 at 2 n.1 (citing *Gordon*, No. 1:25-cv-21831, ECF Nos. 33, 34, 35, 44). TransUnion cannot simultaneously invoke *Gordon* for the proposition that Plaintiff's allegations are fatally deficient and ignore that *Gordon* itself resulted in leave to amend—not dismissal with prejudice—and that the amended complaint survived long enough to reach settlement rather than another dismissal. If anything, *Gordon* confirms the proper remedy here: if the Court finds any deficiency in the pleading, leave to amend is warranted, not the with-prejudice dismissal TransUnion seeks. Here, Plaintiff does far more: the Amended Complaint identifies each account, each category of inaccuracy, the dispute submitted, and Trans Union's failure to correct specific errors notwithstanding the reinvestigation. This Court should deny the Motion in its entirety, or in the alternative, grant leave to amend.

## II. LEGAL STANDARD

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standard as a Rule 12(b)(6) motion to dismiss. *Esys Latin Am., Inc. v. Intel Corp.*, 925 F. Supp. 2d 1306, 1309 (S.D. Fla. 2013). The Court must "accept all facts alleged in the complaint as true and construe the allegations in the light most favorable to the plaintiff." *Hart v. Hodges*, 587 F.3d 1288, 1290 n.1 (11th Cir. 2009). Judgment on the pleadings is appropriate only where "no issues of material fact are raised in the pleadings" and the movant is entitled to judgment "as a matter of law." *Cont'l Cas. Co. v. Winder Lab'ys, LLC*, 73 F.4th 934, 940 (11th Cir. 2023).

A complaint need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability—it means the "factual content allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court may not reweigh allegations, resolve ambiguities against the plaintiff, or demand evidentiary specificity at the pleading stage.

## III. ARGUMENT

### A. Plaintiff's Amended Complaint Adequately Alleges Inaccurate Reporting Under § 1681e(b).

Trans Union argues that Plaintiff's allegations of inaccuracy are "conclusory" because the Amended Complaint does not identify the specific correct values that Trans Union should have reported. This argument misreads both the Amended Complaint and the applicable pleading standard.

The Amended Complaint is far more specific than Trans Union suggests. Plaintiff alleges that Trans Union reported inaccurate information across eight identified tradelines—Bank of America, Exeter Finance, Self Financial/Lead Bank, LVNV Funding, IC Systems, NCB

Management Services, Southern Management Systems, and TrueAccord Collections. Amended Complaint ¶ 13. For each, the Amended Complaint identifies the specific *categories* of inaccuracy: incorrect charge-off reporting, inconsistent delinquency dates, missing payment history spanning more than sixty months, incomplete account identifiers, and missing or inaccurate balance and status information. *Id.* ¶¶ 13–14. These are not "blanket" accusations—they are specific data-field failures tied to specific accounts, supported by the allegation that Plaintiff's dispute letter to Trans Union identified more than 210 individual inaccurate or missing data fields. *Id.* ¶ 15.

Trans Union's own production confirms the level of specificity in Plaintiff's disputes. Trans Union produced 412 pages of Consumer Relations records (Bates Nos. TU_ALTMAN_00001– 00412) showing the before-and-after data fields for each reinvestigated account, the dispute codes assigned (including code C9—"consumer states inaccurate information"—and code F6—"disputes date opened, date of first delinquency"), and the furnisher responses received. These records confirm that disputes were submitted, specific accounts were flagged, and Trans Union processed reinvestigation results that, in many instances, left reporting unchanged. This discovery context— available at the pleading-into-discovery phase in which this 12(c) motion arises—illustrates that Plaintiff's factual allegations are well-grounded.

Trans Union leans heavily on *Gordon v. Equifax*, 2025 WL 2765236. But *Gordon* is distinguishable in a critical respect: that plaintiff alleged inaccuracies in general categories— "inaccurate balances," "missing date closed"—without identifying which specific accounts contained which specific errors, or what the correct information should have been. Here, Plaintiff's Amended Complaint identifies each specific tradeline *and* the specific categories of error associated with those accounts. The Court in *Gordon* itself noted that it was "unclear whether Gordon seeks to claim that each account contains inaccurate information." *Gordon*, 2025 WL

2765236, at \*4. No such ambiguity exists here—the Amended Complaint is clear that all eight specifically identified tradelines contained inaccurate data.

Moreover, Trans Union's argument that "missing" data fields do not constitute inaccuracy as a matter of law at the pleading stage is premature. Trans Union relies on *Hammer v. Equifax Info. Servs., LLC*, 974 F.3d 564 (5th Cir. 2020), a Fifth Circuit case that is not controlling authority and was decided at summary judgment, not the pleadings stage. In the Eleventh Circuit, courts have recognized that omissions can create a "materially misleading impression" actionable under the FCRA where the missing data is integral to understanding a consumer's creditworthiness. *See Felts v. Wells Fargo Bank, N.A.*, 893 F.3d 1305, 1311 (11th Cir. 2018). Whether the missing payment histories, missing removal dates, and contradictory charge-off sequences alleged here created a materially misleading impression is a factual question that cannot be resolved on the pleadings. Plaintiff plausibly alleges that Trans Union reported inaccurate information. The Motion should be denied as to the § 1681e(b) claim.

**B. Plaintiff Adequately Alleges Failure to Conduct a Reasonable Reinvestigation Under § 1681i.**

Trans Union argues that because Plaintiff has not sufficiently alleged inaccuracy, his § 1681i reinvestigation claims fail as a threshold matter. As shown above, that premise is incorrect. But the § 1681i claim independently survives scrutiny.

The Amended Complaint alleges that: (1) Plaintiff submitted a detailed written dispute to Trans Union on September 9, 2025, identifying more than 210 inaccurate or missing data fields and providing itemized explanations for each identified tradeline (Amended Complaint ¶ 15); (2) Trans Union issued reinvestigation results on November 1, 2025 (Amended Complaint ¶ 17); (3) while Trans Union deleted some accounts, it improperly verified Bank of America, Exeter Finance,

and Self Financial despite obvious contradictions and missing data that persisted in those tradelines' reporting (Amended Complaint ¶ 17); and (4) as of the filing of the Amended Complaint, the same inaccuracies remained on Plaintiff's reports (Amended Complaint ¶ 26). These allegations easily satisfy the pleading burden for a § 1681i claim.

Trans Union's own production confirms this narrative. The Consumer Relations records produced show that disputes submitted by mail on October 6, 2025 were processed by an Intelenet vendor employee (Akshita Sharma) on October 7, 2025—within hours of receipt—and were routed through Trans Union's automated ACDV Phase 3 system (TU_ALTMAN_00093). The TrueAccord account, for example, shows dispute code F6 ("disputes date opened, date of first delinquency") alongside a reported delinquency date of January 9, 2022—despite the account not being reported until May 2025. This facially contradictory data sequence is precisely the type of "obvious internal inconsistency" that the FCRA requires a CRA to reconcile. *See* Amended Complaint ¶¶ 23–25.

Trans Union's assertion that a consumer's disagreement with a reinvestigation outcome is insufficient to state a § 1681i claim misstates Plaintiff's allegations. Plaintiff does not merely assert dissatisfaction with Trans Union's outcome—he alleges that Trans Union's process was automated and superficial, that it failed to reconcile internally contradictory data, and that it continued to publish information that Trans Union knew or should have known was inaccurate after receiving a detailed, itemized dispute. These are substantive procedural deficiency allegations, not bare disagreements. *Cf. Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021) (reasonableness of reinvestigation is a factual issue).

Because Plaintiff adequately alleges both the predicate inaccuracy and the deficient reinvestigation process, his § 1681i claims should survive.

**C. Plaintiff Adequately Alleges Both Negligent and Willful FCRA Violations.**

Trans Union's Motion does not separately challenge the negligent (§ 1681o) versus willful (§ 1681n) distinction, other than to argue that no viable FCRA claim exists at all. Because Plaintiff sufficiently alleges inaccuracy and deficient reinvestigation as shown above, both the negligent and willful claims survive.

With respect to willfulness, the Amended Complaint alleges that Trans Union: (1) relied on automated or superficial verification procedures that prioritized speed and volume over accuracy (Amended Complaint ¶ 81); (2) failed to reconcile obvious internal inconsistencies despite receiving an itemized 210-error dispute (Amended Complaint ¶ 82); and (3) continued to publish information it knew or should have known was inaccurate (Amended Complaint ¶ 83). Willfulness under § 1681n encompasses "reckless disregard" of the FCRA's requirements. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57 (2007). Systemic reliance on automated processes that fail to reconcile internally contradictory account data, in the face of detailed consumer disputes, supports a plausible inference of reckless disregard. These factual allegations are sufficient at the pleading stage.

**D. Plaintiff's FDUTPA Claim Is Adequately Pleaded.**

Trans Union argues that Plaintiff's FDUTPA claim fails because (1) Plaintiff has not adequately alleged inaccuracy, and (2) the claim sounds in fraud and must satisfy Rule 9(b)'s heightened pleading standard, which Plaintiff has allegedly not met. Both arguments fail.

First, as demonstrated above, Plaintiff has sufficiently alleged that Trans Union published inaccurate, incomplete, and misleading information and represented to Plaintiff and to potential creditors that this information had been "verified as accurate" when Trans Union knew or should have known it was not. Amended Complaint ¶¶ 91–95.

Second, the question of whether Rule 9(b) applies to FDUTPA claims depends on whether the claim is "grounded in fraud" rather than sounding in negligent or unfair conduct. Not all FDUTPA claims require Rule 9(b) particularity—only those alleging affirmative fraudulent misrepresentations. *See Llado-Carreno v. Guidant Corp.*, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011). Here, Plaintiff's FDUTPA claim is grounded in Trans Union's unfair business practices—maintaining and publishing materially inaccurate consumer reports, conducting sham reinvestigations, and misrepresenting the results of those reinvestigations to Plaintiff and to creditors. Even if Rule 9(b) applies, Plaintiff satisfies it: the Amended Complaint identifies the specific deceptive representation (Trans Union's "verified as accurate" determination), the instrument of that representation (the November 1, 2025 reinvestigation response), the parties involved (Trans Union and Plaintiff), and the deceptive content (falsely representing that inaccurate, internally contradictory information had been lawfully verified). Amended Complaint ¶¶ 91–95.

Plaintiff's FDUTPA claim is further grounded in Trans Union's unfair practices—independent of the fraud theory—including its systemic use of automated dispute processes that fail to protect consumers' rights. The FDUTPA's "unfairness" prong does not require proof of fraud or deception; it requires only that the practice "offend established public policy" and be "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). Trans Union's practice of deploying offshore vendors to process detailed consumer disputes in a matter of hours through automated systems, without meaningfully reconciling obvious contradictions in account data, satisfies this standard at the pleading stage.

Finally, Trans Union's argument that the FDUTPA claim is preempted by, or duplicative of, the FCRA is incorrect. Plaintiff expressly disclaims any intent to impose duties inconsistent with the FCRA, and seeks FDUTPA redress for deceptive and unfair business conduct that is independent of Trans Union's technical FCRA obligations. Amended Complaint ¶ 97. Plaintiff's FDUTPA claim does not implicate the heightened pleading standard the Eleventh Circuit recently applied in *Pop v. Lulifama.com LLC*, No. 24-11048, 2025 WL 2177719 (11th Cir. Aug. 1, 2025). In *Pop*, the court held that Rule 9(b) applies to a FDUTPA claim only when its "underlying allegations closely track the elements of common law fraud." *Id.* at *6. Here, Plaintiff's FDUTPA claim does not sound in fraud — it is grounded in the *unfairness* prong of FDUTPA: Trans Union's systemic deployment of offshore vendors to process detailed consumer disputes through automated systems in a matter of seconds, its issuance of mass boilerplate "verified as accurate" responses without reconciling facially impossible data, and its continued publication of inaccurate information after actual notice of specific errors. These allegations track the elements of an *unfair practice* — conduct that "offends established public policy" and is "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006) — not the elements of common law fraud. Rule 9(b) therefore does not apply. And even if it did, Plaintiff satisfies it: the Amended Complaint identifies the specific representation (Trans Union's "verified as accurate" determination), the instrument (the November 1, 2025 reinvestigation response), the speaker (Trans Union), and why it was false (Trans Union's own records reveal facially contradictory and impossible data that was never reconciled). *See Amended Complaint* ¶¶ 91–95.

**E. In the Alternative, Leave to Amend Should Be Granted.**

Should the Court conclude that any aspect of the Amended Complaint requires greater factual specificity, Plaintiff respectfully requests leave to amend pursuant to Fed. R. Civ. P. 15(a)(2). Leave to amend should be freely granted when justice so requires. The Eleventh Circuit has held that dismissal with prejudice at the pleading stage is appropriate only when amendment would be "clearly futile." *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004). This case is in active discovery. Trans Union has produced 412 pages of Consumer Relations records (TU_ALTMAN_00001–00412), responded to interrogatories, and responded to requests for production. The factual record available to Plaintiff supports additional specific allegations regarding the inaccuracies in each tradeline and the deficiencies in Trans Union's reinvestigation process. Any pleading deficiency is curable, and amendment is not futile.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Nathaniel Thomas Altman respectfully requests that this Court deny Defendant Trans Union LLC's Motion for Judgment on the Pleadings in its entirety. In the alternative, Plaintiff requests leave to file a Second Amended Complaint .

Dated: April 13, 2026

Respectfully submitted,

**CONSUMER RIGHTS LAW, PLLC**

*/s/ Monique N. Reyes*
Monique N. Reyes, Esq.
Florida Bar No. 1026823
848 Brickell Avenue, PH5
Miami, FL 33131
Telephone: (786) 360-7697
Email: monique@consumerrights.law

*Counsel for Plaintiff Nathaniel Thomas Altman*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of April, 2026, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send electronic notice to all counsel of record.

/s/ Monique N. Reyes

Monique N. Reyes
*Attorney for Plaintiff*